ROBERT RUTHERFORD

*v.*

TEMPLE C. SARGENT *et al.*

1. SPECIFIC PERFORMANCE—*can not be claimed as a matter of right.* A specific performance can not be claimed as a matter of right, but rests in the sound discretion of the court, and must be sustained by satisfactory proof.

2. SAME—*of parol contract to sell real estate, made by agent of the owner.* A parol contract to sell real estate, made by an authorized agent, where acts are done by the purchaser sufficient to take it out of the operation of the Statute of Frauds and Perjuries, will, generally, be enforced in a court of equity.

3. The owner of real estate authorized his son, as he claimed, to sell it at a certain price, and the son sold it at that price, by a parol contract, and received a part of the purchase money down, and gave credit for the deferred payments, all of which were subsequently made to him. The purchaser took possession and broke and fenced the land. The owner executed a deed to the purchaser, but never delivered it. He and the purchaser had frequent conversations relating to the land, and the purchase thereof, in which he neither denied nor repudiated the sale, or the authority of his son to make it, but claimed that his son had cheated him, and said that he would do what was right, but that he did not want to do anything until his son did something: *Held*, that a specific performance ought to be decreed, and that the owner should convey the land to the purchaser.

WRIT OF ERROR to the Circuit Court of Coles county; the Hon. JAMES STEELE, Judge, presiding.

Messrs. D. T. & D. S. McINTYRE, and Mr. O. B. FICKLIN, for the plaintiff in error.

Messrs. HENRY & PENWELL, for the defendants in error.

Mr. CHIEF JUSTICE BREESE delivered the opinion of the Court:

This was a bill, on the equity side of the circuit court of Coles county, exhibited by Temple C. Sargent and others, against Robert Rutherford, for the specific performance of a parol contract, made by complainant with the agent of defendant, for the sale and conveyance of a certain tract of land therein described.

The bill alleges the contract was made on the 18th of December, 1863, with one Robert B. Rutherford, the son of defendant, and claiming to be his agent to sell the land; that the price agreed to be paid was fifteen hundred and seventy dollars, two hundred dollars of which was paid down, one thousand dollars on the execution of a bond for a deed, which was in a few days after the sale, and the balance, three hundred and seventy dollars, in a note, payable at a future day, and which had been fully paid by complainant Sargent before

the commencement of the suit. These allegations are sustained by the proof.

It is also alleged, and the proof sustains the allegation, that, in the spring of 1864, succeeding the purchase, the complainant Sargent took possession of the land, which was then wild, uncultivated prairie, broke the soil, enclosed the same with a rail fence, and then sold the same to his son, Aaron Sargent, a deed to be made whenever defendant should make a conveyance.

The bill alleges that his son sold the land to one Noble, and Noble to John Erwin, who is a co-complainant.

The defendant put in his answer to the bill, denying all the material allegations thereof, and denying the agency of his son and authority in him to make the sale, and denying the receipt of the purchase money, or any part of the same, and all knowledge that complainant Sargent had taken possession of the land and made improvements thereon, and insists if he did so, it was in his own wrong.

A replication was filed, and testimony taken, and the cause heard on the bill, answer, replication and proofs, and a decree passed requiring the defendant to make the conveyance as prayed.

To reverse this decree, the defendant brings the record here by writ of error, and assigns this decree as error, and unsupported by the evidence.

The principle is well established that a specific performance can not be claimed as a matter of right, but rests in the sound discretion of the court, and must be sustained by satisfactory proof.

The case is presented by complainant in two aspects: one, that Robert B. Rutherford was the authorized agent of his father, Robert Rutherford, the owner of this land; the other is, if Robert B. was not such agent of his father, the defendant, yet his father, having full knowledge of all the facts, subsequently ratified the sale.

If a parol contract to sell this land was made by an author-
ized agent, and acts done by the purchaser sufficient to take
the case out of the operation of the Statute of Frauds and
Perjuries, such a contract will, generally, be enforced in a
court of equity.     The decisions of this court are numerous
on this point, and it is not controverted.

The agency is well established, we think, by the testimony
not only of Robert B. Rutherford, the actor, but by that of
the defendant himself, who gave authority to his son to make
sale of the land, but he thinks he limited the price to twenty-
five dollars per acre, whilst his son testifies the limit was
twenty dollars per acre.

It was a tract of land of eighty acres, near Windsor,
through one corner of which ran the St. Louis, Alton and
Terre Haute railroad, occupying, as was assumed by the par-
ties, about three acres of the land.     One-half of this, or the
value thereof, was allowed to the purchaser, which, at twenty
dollars per acre, would be thirty dollars, which, deducted
from the price of the whole tract (sixteen hundred dollars),
would leave the precise sum complainant Sargent paid.     The
defendant knew, as appears by the testimony of his son and
agent, that he had sold the land for twenty dollars per acre,
and had allowed this deduction for the right of way of the
railroad, and, although he made objections to it, yet, when
his son told him he would get him other lands, he made no
further objection, and became reconciled.

It does not appear that any part of the money paid by
complainant Sargent to Robert B. Rutherford ever came to
the hands of the defendant, but he was informed, at the time
of the payments, or soon after, that money had been received
on account of it, but made no demand of his son for it, or
any complaint on that score.     Such was the confidence then
existing between father and son, that the former had no dis-
position to question the acts or conduct of the latter in this
matter.     It appears, also, by the testimony of Robert B., that
a good deal was said by defendant to him when he informed

defendant of the sale and terms.   The defendant then said he wanted another piece of land.   His son then informed him he could have whatever he wanted, and that he would get him another piece of land, which then reconciled him. His son testifies that he bought forty acres of railroad land, lying near Mattoon. which was conveyed to him, and afterwards conveyed to the defendant, it being the same land on which the defendant resides.

· About this piece of land, the defendant admits that he got it of Robert B., but gave him property in Mattoon for it, which Robert B. sold for seventeen hundred and fifty dollars. There is a discrepancy here which we will not attempt to reconcile, the one party, for aught we know, being as worthy of belief as the other.   It is sufficient the defendant corroborates his son in this, that the land he lives on was obtained from his son, and he is also sustained by complainant and Orrin Sargent, as will be seen hereafter.

The defendant testifies that, in 1863, the year in which the sale was actually made, his son wanted him to sell this land, and defendant finally told his son, if he would get him forty acres of land near Mattoon, he might sell it, but for not less than twenty or twenty-five dollars per acre; thinks it was twenty-five dollars.   Be this as it may, when informed by his son of the sale and price, though he made objections, became afterwards reconciled.

It is further in proof, by the testimony of Sargent, the complainant, that, after his purchase, he talked to the defendant about back taxes, and he told complainant he thought the taxes were all paid; that he gave money to Mr. Moulton, or Mr. Henry, to pay them.   Complainant told him the land had been sold for the taxes, and he replied that he thought the taxes had all been paid.   Here was an opportunity fairly presented to defendant to disavow the transaction, by saying to complainant, what business was it to him—you have no interest in this land.   Such would have been the conduct of a man who had not sold his land.

But again, complainant testifies that, about the first of May, 1868, he went to see the defendant, and said to him, he had never received a deed for that land, and that it had been standing a good while. Defendant said "Yes," and complainant remarking that his son had moved away, he said "Yes," and then commenced telling complainant about his son cheating him ; that he had cheated him out of five or six thousand dollars, and he would not make a deed until Bing, (which appears to be the middle name of Robert B. Rutherford,) did something ; but told complainant to hold on. Complainant then informed defendant that he had sold the land, and must have a deed. Defendant said to him, hold on ; that he would do what was right, but did not want to do anything until Bing did something.

Here was presented another opportunity to the defendant to repudiate this contract, which he knew had been made by his son, but he did not repudiate it, but encouraged the hope that a deed would be made.

At another interview had by complainant with the defendant, at his house, in the fall before the hearing of the cause, an opportunity was again presented defendant to disavow the act of his son, but instead of so doing, he said he told Bing to sell this land and buy him forty some where else, and he did so, and bought this we are now on—forty acres.

One Orrin Sargent was present at this interview, and he asked defendant if he did not know that Bing sold the land to complainant, and he said yes. Complainant then told him that Bing had informed complainant that he, defendant, had made out a deed to complainant, in his mother's lifetime, for the land north of the railroad, and that it was among his papers. Defendant said yes.

It is also in proof, by Orrin Sargent, that, in September, 1865, he went with his brother to Mattoon, to make a payment on the note for three hundred and seventy dollars. They went into Rutherford's store, in Mattoon, where the defendant was sitting by a stove. Orrin told him his brother

had some money to pay him that T. C. Sargent (complainant,) had sent to pay on the piece of land he had bought, down by Windsor. Defendant said he had not the note, that "Bern" (Bing) had it. On being asked if he, Bern, was in, defendant said he was not, that he would probably be in in five minutes. When Bern came in, the defendant said, there he is, and called him up, and said to him, there was a gentleman there that wanted to pay him some money on a note he held against T. C. Sargent. Bern said, step this way, and his brother paid him one hundred and fifty dollars on the Sargent note.

It is idle to say, in the face of these facts, that defendant was ignorant of the sale of this land to complainant, T. C. Sargent. It is true, the defendant, in his testimony, denies the greater part of these statements, but when it is considered that he has reached a very advanced age, and is sensible that his memory, though good, may have failed some, and from the very nature of the transactions themselves, we are compelled to give entire credence to these facts, which go to show, most satisfactorily, a clear recognition of the act of his son as his agent in selling this land, and though repeated opportunities were presented to defendant to disavow and repudiate these acts, he did not do so, but inspired the hope that everything should be as complainant desired, and that he had actually made a deed to complainant for the land, in pursuance of the contract, which, for some reason, was not delivered.

It is very probable Bing did not pay any of the purchase money to his father, and may have cheated him in that and other respects, but this can be no apology for refusing to perform the contract his agent had made. It is incredible, that defendant did not know of the improvements on the land at their commencement, in 1864, and as they progressed; and knowing them, and of the claim of complainant, and never questioning them, we think he has placed himself out of the pale of protection by a court of equity.

The record shows a clear case wherein to exercise the discretion which governs a court of equity, by decreeing a specific performance of this contract, and the circuit court, in so decreeing, did not err, and its decree must be affirmed.

*Decree affirmed.*